# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER NGUYEN, | : | |
|     Plaintiff, | : | |
| | : | No. 1:20-cv-86 |
| v. | : | |
| | : | (Judge Rambo) |
| DR. GERALD KASPER, *et al.*, | : | |
|     Defendants | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motions for summary judgment (Doc. Nos. 58, 62) filed by *pro se* Plaintiff Christopher Nguyen ("Plaintiff") and Defendant Dr. Gerald Kasper ("Kasper"). The motions are fully briefed and ripe for disposition.

**I.    BACKGROUND**

On January 7, 2020, Plaintiff, who is currently incarcerated at the State Correctional Institution in Waymart, Pennsylvania ("SCI Waymart"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) In an Order dated January 14, 2020, that court transferred the matter to this Court for further proceedings. (Doc. No. 5.) In an Order dated January 17, 2020, this Court dismissed Joseph Vinansky as a Defendant and directed service of Plaintiff's complaint upon Defendant Kasper. (Doc. No. 7.)

Defendant Kasper subsequently filed a motion to dismiss. (Doc. No. 14.) In a Memorandum and Order dated June 17, 2020, the Court denied the motion to dismiss and directed Defendant Kasper to file an answer within fourteen (14) days. (Doc. Nos. 23, 24.) Defendant Kasper filed his answer on June 30, 2020. (Doc. No. 25.) Plaintiff subsequently filed a motion for leave to file an amended complaint (Doc. No. 35) and an amended complaint (Doc. No. 36) to set forth the full name of Defendant Kasper and reflect the Court's previous dismissal of Defendant Vinansky. In an Order dated November 19, 2020, the Court granted Plaintiff's motion. (Doc. No. 38.)

In his amended complaint, Plaintiff avers that he saw Defendant Kasper on November 21, 2017, and that Defendant Kasper "removed and replaced [his] metal filling with a temporary plastic filling." (Doc. No. 36 ¶ 4.) Plaintiff's "tooth pain worsened . . . and he could not eat or chew any food for several days." (*Id.* ¶ 5.) Plaintiff submitted another sick call request on November 28, 2017 and was seen by Defendant Kasper shortly thereafter. (*Id.* ¶ 6.) Defendant Kasper "prescribed Motrin for the pain and swelling." (*Id.*) Plaintiff asked Defendant Kasper to replace the temporary plastic filling with a permanent metal one, and Defendant Kasper "refused[,] stating 'because it cost[s] too much and Waymart won't pay for it.'" (*Id.* ¶ 7.) Plaintiff continued to experience pain and submitted another sick call request.

(*Id.* ¶ 8.) Defendant Kasper saw him on December 1, 2017, and Plaintiff "was then told that he had an infection." (*Id.*) Defendant Kasper "treated [P]laintiff with a white liquid which he applied to his tooth, and prescribed penicillin for the infection." (*Id.* ¶ 9.) Plaintiff's pain and swelling grew worse, and he submitted another sick call on January 1, 2018. (*Id.* ¶ 10.) He saw Defendant Kasper on January 11, 2018 and was told that his tooth had to be pulled because the infection had spread. (*Id.* ¶ 11.) Plaintiff told Defendant Kasper that he did not want it pulled, but Defendant Kasper pulled it anyway. (*Id.*) Based on the foregoing, Plaintiff asserts a violation of his Eighth Amendment rights. (*Id.* ¶ 18.) He seeks declaratory and injunctive relief, as well as damages. (*Id.* at 4.)

Discovery in this matter closed on December 30, 2020. (Doc. No. 38.) On March 3, 2021, the Court granted Plaintiff's motion for a sixty (60)-day extension of time to file dispositive motions. (Doc. Nos. 49, 50.) Plaintiff subsequently filed a motion to compel discovery. (Doc. No. 53.) Accordingly, in an Order dated April 28, 2021, the Court stayed the deadline for dispositive motions pending disposition of that motion. (Doc. No. 54.) On April 30, 2021, the Court denied Plaintiff's motion, lifted the stay, and directed the parties to file dispositive motions within thirty (30) days. (Doc. No. 56.) The parties subsequently filed their motions for summary judgment.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59

(3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as

true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that

6

the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Muhammad v. Martin*, No. 3:19-cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *See Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

B. **Plaintiff's Motion for Summary Judgment**

As an initial matter, Defendant Kasper maintains that Plaintiff's motion for summary judgment should be dismissed because of Plaintiff's failure to comply with Local Rule 56.1. (Doc. No. 61 at 1.) The Court agrees. Local Rule 56.1 provides that all motions for summary judgment must be "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. Moreover, "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." *Id.* In the instant case, although Plaintiff filed a declaration (Doc. No. 60) in support of

his motion, this declaration does not qualify as a statement of material facts that satisfies the requirements of Local Rule 56.1.

In light of his *pro se* status, Plaintiff was advised, at the outset of the above-captioned action, of the requirements of Local Rule 56.1 by Standing Practice Order dated February 8, 2011. (Doc. No. 13.) Moreover, Defendant Kasper raised Plaintiff's failure to comply with the requirements of Local Rule 56.1 in his brief opposing Plaintiff's motion for summary judgment. (Doc. No. 61.) More than a month has passed since Defendant Kasper filed his brief in opposition, and Plaintiff has not attempted to address or correct this deficiency. The Court, therefore, will dismiss Plaintiff's motion for summary judgment (Doc. No. 58) because of his failure to comply with Local Rule 56.1. *See Landmesser v. Hazelton Area School Dist.*, 982 F. Supp. 2d 408, 412-13 (M.D. Pa. 2013) (dismissing *pro se* plaintiff's motion for summary judgment for the same reason).

### C. Defendant Kasper's Motion for Summary Judgment

#### 1. Statement of Material Facts[1]

Plaintiff's deposition in this matter was taken on October 1, 2020. (Doc. No. 64 ¶ 3.) Plaintiff "first had dental care at SCI Coal Township in 2008, which was a filling for the tooth involved in this case, 'Tooth 30.'" (*Id.* ¶ 4.) The dentist who saw him at that time provided a metal filling. (*Id.* ¶ 5.) Plaintiff "admitted that he had lost four teeth before his problem with Tooth 30." (*Id.* ¶ 6.) Plaintiff "had been to the dentist about four times before going to prison at age 28." (*Id.* ¶ 7.)

Plaintiff broke Tooth 30 in 2017 while he was eating. (*Id.* ¶ 8.) He was "seen by [Defendant] Kasper, given an x-ray, and told he would be rescheduled for care." (*Id.*) Plaintiff returned to see Defendant Kasper "and had his metal filling removed,

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the background herein is derived from Defendant Kasper's Rule 56.1 statement of material facts. (Doc. No. 64.) Plaintiff did not file a response to Defendants' statement of facts in compliance with Local Rule 56.1. Moreover, Plaintiff's complaint is not verified and, therefore, may not be treated as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"). Accordingly, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

and it was replaced by a white plastic filling." (*Id.* ¶ 9.) Plaintiff "began having pain with hot or cold foods again after the filling was put in, so he returned to [Defendant] Kasper who prescribed extra-strength Motrin as well as Penicillin." (*Id.* ¶ 10.) Plaintiff "admitted that his [g]rievance documents do not say [Defendant] Kasper told him that putting in another metal filling was too expensive." (*Id.* ¶ 11.)

When Plaintiff returned to Defendant Kasper, "he told him he was still having pain, so he applied a 'white liquid' to the tooth and he was again given Penicillin for an abscess." (*Id.* ¶ 12.) When Plaintiff returned again, Defendant Kasper "told him the tooth was infected down to the gums, and it would have to come out or he would have further problems." (*Id.* ¶ 13.) Although Plaintiff did not want to have the tooth pulled, he agreed to have Defendant Kasper pull it. (*Id.* ¶ 14.) Plaintiff "did not remember signing the authorization to pull the tooth, but said, 'But if I did sign it, then I signed it.'" (*Id.* ¶ 15.) Plaintiff was given a denture to replace Tooth 30 and admitted that "he no longer has heat or cold sensitivity at Tooth 30." (*Id.* ¶¶ 17-18.)

Plaintiff "admitted that his source of information that there is a two year wait before getting dental care at SCI Waymart was unnamed inmates." (*Id.* ¶ 19.) He "thought he was told about the alleged two year wait policy by [Defendant] Kasper in 2013, but he had previously admitted that he first saw [Defendant] Kasper in 2017." (*Id.* ¶ 20.) Plaintiff "admitted that when he had a problem with Tooth 30 at

Waymart, he was seen right away." (*Id.* ¶ 21.) The metal filling "was less expensive than the composite restoration."  (*Id.* ¶ 22.)

2. **Discussion**

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-*

*Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* Finally, "whether or not a defendant's conduct amounts to 'deliberate indifference has been described as a classic issue for the fact finder.'" *Young v. Kazmerski*, 266 F. App'x 191, 193 (3d Cir. 2008) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 567 (7th Cir. 1998)).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this

12

standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

13

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). The "objective component [of an Eighth Amendment claim] is satisfied where a prisoner alleges unnecessary pain associated with delay in receiving medical care." *See Bowlds v. Turn Key Health*, No. CIV-19-726-SLP, 2020 WL 730876, at *3 (W.D. Okla. Feb. 13, 2020) (citations omitted); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (noting that a "three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983"); *Fields v. Gander*, 73 F.2d 1313, 1315 (8th Cir. 1984) (concluding that plaintiff's claim that prison officials knew of his pain from an infected tooth but refused to provide dental care for up to three weeks could support a finding of an Eighth Amendment violation).

In the instant case, Plaintiff does not allege a delay in receiving dental care. Rather, Plaintiff "concedes that he DID receive care." (Doc. No. 65 at 5.) Plaintiff, however, suggests that Defendant Kasper violated his Eighth Amendment rights by basing his actions on monetary reasons. (*Id.* at 3, 6.) According to Plaintiff, Defendant Kasper replaced his metal filling with a plastic one because metal fillings cost too much. (*Id.* at 3.) Plaintiff avers that the plastic filling caused his tooth to become infected, ultimately resulting in its removal.

14

Upon review of the record, the Court agrees with Defendant Kasper that Plaintiff cannot maintain an Eighth Amendment claim against him. As an initial matter, Plaintiff has presented no evidence to support his suggestion that the plastic filling caused his tooth to become infected. Likewise, the record refutes Plaintiff's assertion that Defendant Kasper did not replace the metal filling with a new metal filling because it cost too much. Defendant Kasper did not tell Plaintiff "that the treatment plan instituted was cheaper than metal fillings." (Doc. No. 64-3 at 3.) Rather, he told Plaintiff "that the adhesive nature of the composite restoration required the loss of less healthy tooth structure and that the composite restoration was more insulating than the metal filling." (*Id.*) Moreover, the treatment plan provided, including the ultimate removal of the tooth "and the subsequent fabrication of a mandibular partial denture[,] was actually considerably more costly than a metal restoration." (*Id.* at 4.)

Plaintiff asserts that his case is "exactly similar" to the issue presented in *Talbert v. Corr. Dental Assocs.*, 731 F. App'x 145 (3d Cir. 2018). In that matter, Mr. Talbert, "on numerous occasions, and citing his extreme fear of needles in his mouth, requested off-site oral surgery under general anesthesia in order to extract a tooth." *Id.* at 147. The defendants denied the request, but offered to "extract the tooth with a local anesthetic (which would, of course, require placing a needle in

Talbert's mouth." *Id.* Mr. Talbert refused that treatment and continued to request a referral for surgery under general anesthesia. *Id.* The district court granted summary judgment, concluding that the "denial of a referral for off-site oral surgery under general anesthesia for Talbert's tooth removal could not amount to deliberate indifference." *Id.* The Third Circuit remanded for further consideration, noting that "if Talbert's fear was an objective medical need, or an actual phobia, it should have factored into the treatment plan." *Id.* at 151.

Contrary to Mr. Talbert, who did not receive the needed extraction, the record in the above-captioned action simply does not suggest that Defendant Kasper was deliberately indifferent to Plaintiff's need for dental care. After Plaintiff's tooth broke, he was given an X-ray and was seen by Defendant Kasper, who replaced the metal filling with a "white plastic filling." (Doc. No. 64 ¶¶ 8-9.) When Plaintiff began experiencing pain, Defendant Kasper prescribed extra-strength and penicillin. (*Id.* ¶ 10.) Plaintiff was subsequently treated with another course of penicillin and a "white liquid" applied to the tooth after developing an abscess. (*Id.* ¶ 12.) When Plaintiff returned again, Defendant Kasper "told him the tooth was infected down to the gums, and it would have to come out or he would have further problems." (*Id.* ¶ 13.) Although Plaintiff did not want to have the tooth pulled, he agreed to have Defendant Kasper pull it. (*Id.* ¶ 14.) Plaintiff was given a denture to replace Tooth

16

30 and admitted that "he no longer has heat or cold sensitivity at Tooth 30." (*Id.* ¶¶ 17-18.) Plaintiff "admitted that when he had a problem with Tooth 30 at Waymart, he was seen right away." (*Id.* ¶ 21.)

Given the record, the Court cannot conclude that Defendant Kasper was deliberately indifferent to Plaintiff's need for dental care. Rather, as noted above, Defendant Kasper saw Plaintiff on multiple occasions and provided treatment. While Plaintiff may not be happy about the treatment ultimately provided, such a disagreement is insufficient to maintain an Eighth Amendment claim. *See Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009). Moreover, nothing in the record supports Plaintiff's assertion that the plastic filling caused the infection, and the record refutes Plaintiff's allegation that he was not given another metal filling because it was too costly. Accordingly, Defendant Kasper's motion for summary judgment will be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's motion for summary judgment (Doc. No. 58) for Plaintiff's failure to comply with Local Rule 56.1. Defendant Kasper's motion for summary judgment (Doc. No. 62) will be granted. An appropriate Order follows.

s/ Sylvia H. Rambo<br>United States District Judge

Date: July 14, 2021